[Civil No. 1377.   Filed May 6, 1914.]

[140 Pac. 504.]

## COUNTY OF YUMA, Appellant, v. W. W. STURGES, Appellee.

1. OFFICERS—COMPENSATION—RIGHT TO CHANGE.—In the absence of constitutional prohibitions, the compensation of any public officer may be increased or diminished at any time during the term for which he was elected.

2. OFFICERS—COMPENSATION—RIGHT TO CHANGE.—Constitution, article 4, section 17, prohibiting the increasing or diminishing of the compensation of any public officer during his term of office, abridges the legislative power to increase the compensation of any public officer during his term, but the compensation prescribed for and as an incident to the office at the beginning of a term must remain during the term.

3. OFFICERS — COUNTY TREASURER — SALARIES — MODIFICATION DURING TERM.—Under Civil Code of 1901, paragraph 2608, dividing into classes counties based on the assessed valuation of property for the fixing of compensation for county officers, and paragraph 2609 as amended by Laws of 1905, chapter 11, providing that county officers shall receive such compensation as is provided for and none other, and paragraphs 2610, 2611, fixing the salary of treasurers of counties having an assessed valuation of $9,000,000 or more at $2,500 per annum, and in counties having an assessed valuation of $3,000,000 or more a salary of $2,200 per annum, fix the compensation of county treasurers, and a county treasurer, entitled at the time of his election to a salary of $2,200, is entitled to a salary of $2,500 when during his term the assessed valuation exceeds $9,000,000, notwithstanding Constitution, article 4, section 17, pro-

hibiting an increase in compensation during the term of office, and notwithstanding Laws of 1912, chapter 93, classifying the counties according to population for the fixing of salaries of county officers, which is inapplicable because enacted during the term of office.

[As to application of rule against change of salary to office held during pleasure of appointing power, see note in Ann. Cas. 1913A, 316.]

APPEAL from a judgment of the Superior Court of the County of Yuma. Frank Baxter, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Fred L. Ingraham, for Appellant.

Messrs. Wupperman & Wupperman, for Appellee.

FRANKLIN, C. J.—The appellee is the treasurer of Yuma county. The term of office to which he was elected began on the fourteenth day of February, 1912, and will end on the thirty-first day of December, 1914. The compensation of appellee as such treasurer for the month of September, 1913, is the matter in dispute.

A public officer is entitled to the salary provided by law as an incident to the office. Unless the fundamental law places a limitation upon the law-making power, that power may regulate, alter, increase or diminish the compensation of such an officer at any time.

Having its basic idea in principles of the soundest public policy that a public officer should receive that compensation fixed by law without increase or diminution during his term of office, in other words, that compensation in the contemplation of the aspirant and the people when they elected him, the Constitution has placed an inhibition upon the law-making power in this language: "The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office." Article 4, sec. 17, Ariz. Const. When the salaries or compensation of public officers have been definitely fixed or prescribed by law, either by the Constitution of the state

or by some statute made in pursuance thereof, the salary or compensation so prescribed may not be increased or diminished during the term of the officer.

It is at once seen that the constitutional restriction is an abridgment of the law-making power to either increase or diminish that compensation of the officer during his term, and which was prescribed for and as an incident to the office at the beginning of his term; that during his term of office the public officer enjoys exemption from legislative interference and control over the amount of his compensation, and at the same time has a curb put upon his activity in the direction of an increase of compensation, whether such activity be worthy or pernicious. In fine he may devote his attention to the performance of his official duties, unembarrassed by any feeling that his worth is being niggardly rewarded in money, and the offspring of such a feeling which usually moves in the direction of increased compensation. At the same time there is the counterpart which attends him with a security from the wretched thought that others may become imbued with the conviction that his stipend is much too large for one of his capacity, and thus move with the pruning-hook by way of economy in the public funds, or that desire which might in time find congenial soil in the breast of a people desiring to get rid of an officer altogether, and to that end take away that compensation which he hath.

The matter of paramount importance here, then, is to ascertain what compensation was fixed or prescribed by law when the term of office of the appellee commenced. That compensation was prescribed by the Revised Statutes of Arizona of 1901. We shall consult the provisions thereof which are relevant to the inquiry at hand. Paragraph 2608 provides:

''That for the purpose of fixing the compensation of county officers the counties of the state are hereby divided into the following classes:

''1. Counties having an equalized assessed valuation of property of three million dollars or more, shall be counties of the first class.

''2. . . .

''3. . . .

''4. . . .

''5. . . .

''6. . . . ''

Paragraph 2609, as amended by the Laws of 1905, chapter 11, reads as follows: "County officers shall receive such compensation as is provided hereafter and none other. All salaries, unless otherwise provided, shall be paid quarterly at the end of each quarter; provided that in counties of the first class, the boards of supervisors of said counties may by resolution provide that all salaries shall be paid monthly at the end of each month."

Paragraph 2611 provides: "County treasurers shall receive, in counties of the first class, a salary of two thousand two hundred dollars per annum. . . . "

Paragraph 2610 provides: "The treasurers of the counties of the first class having an assessed valuation of nine million dollars and over in the state of Arizona shall each receive a salary of twenty-five hundred dollars per annum."

When the term of office of appellee commenced, Yuma county was a county of the first class, and at the time the equalized assessed valuation of the property in the county was more than $3,000,000, but less than $9,000,000. In the month of August, 1913, however, pursuant to law, the state board of equalization fixed the assessed valuation of property in said county in an amount over the sum of $9,000,000, to wit, the sum of $13,280,659.50. The appellee claimed his salary for the month of September, 1913, at the rate of $2,500, to wit, in the sum of $208.33, which the county declined to pay, hence this action. When appellee's term of office began his salary as treasurer of a county of the first class was definitely fixed and prescribed by law. While the equalized assessed valuation of property in the county remained less than $9,000,000, he was entitled to a salary at the rate of $2,200 per annum, it being also provided in the law prescribing such salary that when the county has an assessed valuation of $9,000,000 and over, then the treasurer thereof is entitled to compensation at the rate of $2,500 per annum, being in the monthly sum of $208.33.

By chapter 93, Laws of 1912, for the purpose of regulating and fixing the compensation of all county and precinct officers, the several counties of the state are classified according to population. The classification, under this act designates Yuma county as a county of the eighth class, and the salary of the treasurer of such county is fixed in the sum of $2,250

per annum. This act is not applicable to the appellee, for the reason that such application is prohibited by section 17, article 4, of the Constitution, which forbids the increase or diminution of the compensation of any public officer during his term of office. The appellant argues that if chapter 93, *supra,* may not be applied because in contravention of the Constitution, then paragraph 2610, *supra,* should not be applied for the same reason, and therefore appellee's salary must be as provided in paragraph 2611, *supra.* Such a position is not tenable. A consideration of the statute fixing the compensation of the appellee at the beginning of his term of office will make clear the distinction. When his term of office began, his compensation was definitely fixed and prescribed according as the assessed valuation of the county may be ascertained, if less than $9,000,000 a certain sum, and if $9,000,000 and over a certain sum; the fluctuation not being occasioned by any subsequent legislative action, but by operation of the very law in force and effect and controlling the compensation of the office at the beginning of appellee's term of office— by the operation of that law automatically.

Section 9 of article 11 of the California Constitution reads as follows: "The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed." It will be observed that the inhibition there applies only to an increase of compensation and not to its diminution.

In the case of *Puterbaugh* v. *Wadham,* 162 Cal. 611, 123 Pac. 804, the court having the question of the salary of a justice of the peace being automatically increased, under a statute existing when he went into office, said: "Section 9 of article 11 is an inhibition directed to the legislature because it applies, not only to attempted increases of salaries, but to efforts to extend terms of office. The latter part of the section is unquestionably a limitation upon legislative power, and the former from its association should be similarly construed. We think the section could have no application to the change in salary due to the passing of a city, not by legislative act, but by increased population, from one class to another—not a legislative, but an automatic, change. When

petitioner was elected justice of the peace the statute established his salary at $2,000 a year because of the population of San Diego; but the same statute fixed the salary of a justice of the peace in a city- of the second class, and the evolution of the city into that class did not increase his salary as such; it merely placed him in a new class in which he was entitled to a certain salary, which happened to be in excess of that payable to him when he took the office. The possibility of a change in his status when the city should grow into another class must have been in the contemplation of the officer and of the people who elected him. That this change would operate to increase his salary must also have been within their contemplation, and section 9 of article 11 of the Constitution, which was designed to protect taxpayers from legislative interference with their rights by increasing the compensation paid to their elected officers without consent of the electorate would have no application to such a case as this.''

Under the facts before us the reasoning in the Puterbaugh case is especially forcible. Under the classification in force when appellee went into office, Yuma county was a county of the first class, with an assessed valuation less than $9,000,000; his compensation was therefore fixed at $2,200 per annum. In August, 1913, Yuma county, while still remaining a county of the first class, nevertheless its equalized assessed valuation became more than $9,000,000, and appellee's compensation was therefore fixed at $2,500 per annum. Not by virtue of any subsequent legislative action, but solely by the automatic operation of the very law in effect at the beginning of the term, and which law definitely prescribed and fixed the compensation incident to the office, the amount thereof being graded according to the determination of an extraneous fact, to wit, the fact of the equalized assessed valuation.

Let us compare the statute of 1901 with a statute supposed. If the statute existing when appellee went into office made provision that the term of his office shall begin on the fourteenth day of February, 1912, and end on the thirty-first day of December, 1914, and that such officer shall receive a salary of $2,200 for the first year of the term, and thereafter during the remainder of said term the officer shall receive a salary at the rate of $2,500 per annum, and that the salary of such officer so provided shall be paid monthly, one could not be

persuaded that the provisions of such a statute are within the inhibition of the Constitution prohibiting the compensation of a public officer from being increased during his term of office. In this instance, also, the amount would be graded according to the determination of an extraneous fact, to wit, the fact of one year of the term having expired. The law as it is and the one supposed, though differing in the medium of expression, do not differ in their application. The two statutes differ in words, but not in the effect of the words.

The constitutional inhibition has no application here, and the judgment of the lower court awarding appellee compensation for the month of September, 1913, in the sum of $208.33, being at the rate of $2,500 per annum, is correct.

The judgment is affirmed.

ROSS, J., concurs.

CUNNINGHAM, J., Dissenting.—Section 26, chapter 93, Laws of 1912, repeals all laws in conflict with the provisions of that chapter. Paragraphs 2608, 2610 and 2611, Revised Statutes of Arizona of 1901, fix the compensation of county treasurers upon a basis of assessed valuation of property. The laws of the territory of Arizona were continued in force as laws of the state of Arizona "until they expire by their own limitations or are altered or repealed by law." Section 2, art. 22, Constitution of the state. Paragraph 2611, Revised Statutes of Arizona of 1901, is given force in the majority opinion as fixing the compensation of the treasurer of Yuma county for the month of September, 1913. If chapter 93, Laws of 1912, is not effective as a repeal, then section 2 of article 22, Constitution, must be construed as limited by section 17 of article 4, Constitution, as to repeal of laws fixing the compensation of county officers as well as increasing or diminishing their compensation during their term of office. To hold that a statute which is not the means of fixing an officer's compensation at any time prior to its repeal is continued in force during a term of office for the sole purpose of allowing the condition to arise by which the salary may be fixed with reference to such statute is in effect giving an officer a vested right in a law fixing his compensation conditionally.

I cannot approve such doctrine as within the Constitution

or legislative intent. An officer is entitled to such salary only as is affixed to the office he holds. He has no rights in a statute providing certain conditions, such as an increase in the assessed valuation of property by which his salary automatically becomes increased, the condition arising. In this case paragraph 2611, Revised Statutes of Arizona of 1901, was repealed May 31, 1912. Plaintiff made no claim that the assessed valuation of property in Yuma county reached $9,000,000 and over prior to August, 1913, more than a year after the repeal had become effective. I am clearly of opinion that paragraph 2611, Revised Statutes of Arizona of 1901, cannot be the basis for fixing his compensation after its repeal a year previous to the time when it is invoked for that purpose by the reason of an increase in the assessed valuation of property. Plaintiff's compensation must either remain as fixed by paragraph 2610, Revised Statutes of Arizona of 1901, which fixes his compensation at the commencement of his term of office, or be fixed by the provisions of chapter 93, Laws of 1912. If fixed by paragraph 2610, Revised Statutes of Arizona of 1901, notwithstanding the repeal, it is because of section 17 of article 4, Constitution; if fixed by the provisions of chapter 93, this is because section 2 of article 22, Constitution, is to be construed with, and as an exception to, section 17 of article 4, Constitution. This is the proper rule of construction applicable to the matter (Cooley's Constitutional Limitations, 17th ed., pp. 91, 92), and gives every word and clause of both sections of the Constitution a meaning, and preserves the validity of chapter 93, Laws of 1912. Any other construction placed upon the Constitution makes chapter 93, Laws of 1912, invalid and inoperative as to all county officers whose salaries were fixed by the laws in force under the territorial government during their terms of office, and wholly neutralizes the general state law upon the subject of county and precinct officers' salaries contemplated by section 4 of article 12, Constitution, during the current term of office. Therefore, I dissent.