## SEPTEMBER TERM, 1892.

JAMES N. CARLILE, PLAINTIFF IN ERROR, v. JOHN M. HENDERSON, DEFENDANT IN ERROR.

1. SALARY OF PUBLIC OFFICER.—In the absence of any constitutional restriction, the salary of a public officer may by proper legislative authority be either increased or diminished during his official term.

2. RESTRICTION OF LEGISLATIVE POWER—OBJECT OF.—Section 19 of article 4 of the constitution forbids the increase or diminution of the salary of any executive officer during his official term ; the object of such provision is to lessen the evils of partisan and personal legislation by restricting the power of the general assembly to reward favorites, punish opponents, or make bids for executive favors.

3. CONSTITUTIONAL PROVISIONS NOT IN CONFLICT.—Section 30 of article 5 of the constitution is aimed at the same evil as section 19 of article 4 ; they are not in conflict with each other ; and section 30 is applicable to the executive officers referred to in section 19.

4. CONSTITUTIONAL LIMITATION.—The act of. January 13, 1891, increasing the salary of the state treasurer is limited in its operation by the constitution,—that is, it cannot be held effective to change the salary of such officer from the sum at which it was fixed at the time of his election.

*Error to District Court of Arapahoe County.*

APPLICATION in the district court for a writ of *mandamus.* Judgment for respondent. Petitioner brings the record to this court for review by writ of error.

Mr. C. S. THOMAS and Messrs. BRYANT & LEE, for plaintiff in error.

Mr. J. H. MAUPIN, attorney general, and Mr. H. B. BABB, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The petitioner below, as state treasurer, asked that respondent, as state auditor, be commanded to issue to petitioner certain warrants for his services as treasurer of the state of Colorado at the rate of six thousand dollars per annum. Respondent refused to issue warrants for any greater sum than at the rate of three thousand dollars per annum. Upon demurrer to the petition, the district court held the petitioner's claim insufficient in law, and dismissed the proceeding.

The conceded facts of the case are as follows: At the regular state election in November, 1890, Hon. James N. Carlile was elected to the office of state treasurer of the state of Colorado. The date fixed by the constitution for the beginning of such term of office was the second Tuesday of January next after such election, which was January 13, 1891. At that date the petitioner as treasurer elect could have qualified and assumed the duties of said office.

The general assembly, which convened the first Wednesday in January, 1891, passed an act "in relation to the state treasurer." (See Session Laws, p. 196.) Said act, among other things, increased the salary of the treasurer from three thousand dollars per annum to six thousand dollars per annum. Said act was passed by both branches of the general assembly, with an emergency clause providing that it should take effect immediately after its passage, and on January 13, 1891, at about the hour of eleven o'clock in the forenoon, was approved by the governor. The petitioner Carlile took the oath of office as treasurer about six hours after said act had been approved, and filed his bond as state treasurer and actually entered upon the duties of his office on January 14, about twenty-four hours after such approval. The office of state treasurer was held and the duties thereof discharged by Hon. Wm. H. Brisbane, petitioner's predecessor in office until about eleven o'clock in the forenoon of January 14, 1891, when petitioner duly qualified. Mr. Brisbane held over pursuant to section 1 of article 12 of the constitution.

The general rule undoubtedly is, that in the absence of any constitutional restriction the salary of a public officer may by proper legislative authority be either increased or diminished during his official term. Mechem on Public Offices, 857; Cooley's Const. Lim. 276.

The decision of the present controversy must turn upon the proper construction to be given to certain provisions of our state constitution. Among these provisions are the following:

Art. 4, sec. 1. "The executive department shall consist of a governor, lieutenant-governor, secretary of state, auditor of state, state treasurer, attorney general, and superintendent of public instruction, each of whom shall hold his office for the term of two years, beginning on the second Tuesday of January next after his election. * * * "

Art. 4, sec. 19. "The officers named in section 1 of this article shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms. * * * "

In behalf of petitioner it is contended that the phrase "during their official terms," as used in section 19 of article 4, means the period of time during which the officers referred to in said section *actually* occupy or hold their respective offices; and that inasmuch as the act of January 13, 1891, actually became a law by executive approval before petitioner *actually* qualified as state treasurer, therefore his salary was not by said act increased during his official term, and so he is entitled to receive the increased salary provided by said legislative act, notwithstanding said section 19.

On the part of respondent it is claimed that the phrase "during their official terms," as used in said section 19, means the terms for which said officers are chosen respectively as the word term is used in section 1 of the same article, or the whole period of time which said officers may occupy or hold their respective offices; that petitioner could not delay the beginning of his term so as to reap any advantage therefrom by failing to qualify as soon as his official

term commenced according to said section 1 ; and that inasmuch as petitioner's term commenced so that he might have qualified as state treasurer before the act of January 13, 1891, became a law by executive approval, therefore the act, for the purpose of this controversy, must be considered as passed during the official term of petitioner, and so petitioner is by force of said section 19 debarred from receiving the increased salary provided by said legislative act.

But we need not place the decision of this case upon the construction to be given to section 19 of article 4. Section 30 of article 5 is clear, explicit and decisive. The part particularly relating to this controversy reads as follows :

Art. 5, sec. 30. "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment. * * *"

The act of January 13, 1891, was passed more than two months after the election of petitioner to the office of state treasurer. Such office is a public office. Petitioner, therefore, is not entitled to the increased salary provided by the legislative act passed after his election, unless such legislation is otherwise provided for in the constitution itself. It is not enough that such legislation is not otherwise forbidden in the constitution; section 30 sufficiently forbids it unless it be elsewhere affirmatively provided for in the constitution.

It is the theory of petitioner that his right to the increased salary provided by the act of 1891 is, by the exception clause introducing section 30, saved from the prohibitory language of said section. In support of this theory it is urged by petitioner's counsel that the exception clause of section 30 refers to section 19 of article 4, above quoted, and that since (as counsel contend) said section 19 does not prohibit an increase of an executive officer's salary before he actually qualifies and enters upon his term, therefore section 30 does not. This logic is unsound. Section 19, like section 30, is a prohibitory section, only the former section does not go so far as the latter. Section 19 prohibits the increasing or di-

minishing of the salaries of executive officers during their official terms; but it does not provide that the increase or diminution of such salaries shall not be subject to other or further constitutional restrictions. Section 30 (subject to the exception already noted) provides that no law shall extend the term of *any* public officer or increase or diminish his salary or emoluments after his election or appointment. As already stated, in order to bring any constitutional provision within the exception to section 30, it must expressly *provide* for the prohibited legislation or some part of it. It is not enough that there is another provision relating to official salaries, unless such other provision provides for the legislation prohibited by section 30.

The affirmative part of section 19 of article 4 provides that the executive officers shall receive for their services a salary to be established by law. This must be held to mean a law enacted in conformity with the constitution, and hence, in conformity with section 30, unless section 19 expressly indicates the contrary. The prohibitory words of section 19 in no way conflict with the prohibitory words of section 30. The latter section is broader and more comprehensive than the former, but not contradictory of it. Hence, by a familiar rule of statutory construction, full effect must be given to the language of both sections. By section 19 *executive* officers cannot have their salaries increased or diminished during their official terms. By section 30 *no* public officer can by law have his *term extended* or his *salary* or *emoluments* increased or diminished after his *election* or *appointment*. *People ex rel. Livesay v. Wright*, 6 Colo. 92.

We have endeavored to construe section 30 according to the plain, ordinary signification of its words. No reason is perceived for resorting to any other rule since such construction best effectuates the purposes of said section. Nothing in the line of partisan or personal legislation could be more mischievous than that the general assembly should have the power, at the opening of the legislative session, to rush through acts increasing or diminishing the salaries of those

just elected to executive offices. The temptation to thus re-
ward favorites, punish opponents, or make bids for executive
favors, would be as great before such officers elect had quali-
fied as afterwards.  That it was the object of the constitution
makers to prevent such evils cannot be doubted.  Mechem
on Public Offices, sec. 385 *et seq.;* also, 858; Cooley's Const.
Lim. 334; *State ex rel. Haight v. Love,* 39 N. J. Law, 14;
also 476; *People ex rel. Seeley v. May,* 9 Colo. 80; *State v.
Hudson County,* 44 N. J. Law, 388.

We must not be understood as intimating that the increase
of salary of the state treasurer by the act of 1891 was prompt-
ed by any unworthy or improper motive, either on the part
of the petitioner or of any persons concerned in the passage
of that act.  On the contrary, considering the increased bur-
dens and liabilities imposed upon the state treasurer by that
act, it will doubtless be a subject of general regret that pe-
titioner cannot receive the increased salary thus provided.

The question is asked: To what provision or provisions
of the constitution does the exception introducing section
30 of article 5 refer, if not to section 19 of article 4?  The
question is fair enough for purposes of argument, but it is
not difficult to answer.  For example: Section 15 of arti-
cle 6 expressly provides that the general assembly after the
year 1878 "may extend or abridge the term of office" of
certain officers "then holding."  It is probable, also, that
the hold-over senators of the first general assembly might
have had the compensation for their services in the second
general assembly increased under section 6 of article 5 of
the constitution.  But examples of this kind need not be
multiplied in order to uphold the construction above given
to the language of section 30.

It is contended that section 30 must be held to apply to
offices other than those of the executive department referred
to in section 19.  This contention is untenable.  The lan-
guage of section 30 is broad and comprehensive.  The ex-
ception introducing said section is also general.  If the sole
purpose of the exception had been to exclude officers of the

executive department from the prohibitory words of said section, as counsel for petitioner contend, different language would undoubtedly have been employed. This view is further manifest from the fact that a special *proviso* was deemed necessary to exempt the governor, as well as certain judicial officers, from the operation of the prohibitory words of section 30.

In declaring that petitioner cannot lawfully receive the increased salary sued for, we do not declare the act in question unconstitutional, but simply say that inasmuch as said act was passed after petitioner was elected to the office of state treasurer, the constitution prevents said act from changing his salary from the sum at which it was fixed at the time of his election.

The judgment of the district court must be affirmed.

*Affirmed.*