### CARTER, State Auditor, v. STATE ex rel. TAYLOR.

No. 10939—Opinion Filed Dec. 19, 1919.

(Syllabus by the Court)

#### Officers—Change of Salary During Term—Constitutional Law.

Section 10, art. 23, Constitution of Oklahoma, provides: "Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed: Provided, that all officers within this state shall continue to perform the du-

ties of their offices until their successors shall be duly qualified." Held, where a person is appointed to fill an unexpired term or fractional term of a public office, "his term of office" begins with his appointment and qualification, and he is entitled to receive the salary provided by law at the time of such appointment, although such law is enacted subsequent to the date of the election or appointment of his predecessor.

Mandamus by the State, on the relation of Baxter Taylor, against F. C. Carter, State Auditor. Judgment for relator, and respondent brings error. Affirmed. (All members of the Supreme Court having certified their disqualifications in the case, the following were duly appointed and qualified as Special Justices: N. A. Gibson, H. A. Ledbetter, Ralph E. Campbell, J. G. Ralls, Horace G. McKeever, J. A. Duff, Philos S. Jones, R. H. Loofbourrow, and Jason G. McCombs.)

J. R. Cottingham and S. W. Hayes, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for defendant in error.

LOOFBOURROW, J. This is an action brought by the State of Oklahoma, on relation of Baxter Taylor, for writ of mandamus compelling F. C. Carter, State Auditor, to issue and deliver warrant in the sum of $250 for the month of July, 1919, for salary, to relator as Commissioner of the State Industrial Commission of Oklahoma, the cause having been submitted to the district court of Oklahoma county and judgment rendered in favor of relator, from which the plaintiff in error appeals.

The relator is a nonconstitutional state officer, the State Industrial Commission having been created by chapter 246, Session Laws 1915, art. 4, sec. 1, the entire act being known as a Workmen's Compensation Act. This act fixed the salary of each of the three members at $2,500 per annum. The same is amended in certain parts by section 15, chapter 14, Session Laws of 1919, wherein the salary is increased to $3,000 per annum.

It is agreed that A. A. MacDonald, under the 1915 Act, was appointed and qualified as member of the State Industrial Commission for a term of six years dating from January 1, 1917; that he resigned, and E. L. Mitchell was appointed and qualified as his successor; that thereafter E. L. Mitchell resigned as such comissioner, and on March 17, 1919, the relator, Baxter Taylor, was duly appointed, qualified, and is now an acting member of said State Industrial Commission.

It is further admitted and agreed by the parties to this controversy that the law of 1919, increasing the salary of such members of the State Industrial Commission, was enacted prior to the date of the appointment and qualification of the relator. The sole question to be determined in this case is whether or not the relator is entitled to receive the salary of $3,000 per year as provided in the Act of 1919; it being contended on the part of the respondent, F. C. Carter, State Auditor, that the term of office of the relator is under the law a part of the term of office of A. A. MacDonald, which term commenced prior to the enactment of the law of 1919, and that under the provisions of section 10, art. 23, of the Constitution of Oklahoma, the relator is not entitled to receive the salary provided by the law of 1919; said section of the Constitution providing as follows:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed: Provided, that all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

And in support of this contention the Attorney General, in behalf of respondent, has cited Commissioners v. Hart, 29 Okla. 692, and State v. Oklahoma City, 38 Okla. 349.

We have examined both of these cases, and find that in each case the parties were not public officials in the sense in which the term is used in the above section of the Constitution, being mere employes, whose term of employment was for no fixed period and could be terminated at the pleasure of the employer or appointing power.

State v. Stonestreet (Mo.) 12 S. W. 897; Jameson v. Hudson, 82 Va. 282, and State v. Farmer (Mo.) 196 S. W. 1106, are also cited by plaintiff in error. In each of these cases the clause "term of office" is defined and discussed, but in each of these cases the language of the acts under discussion is so dissimilar from the language found in the above section of our Constitution as to be of little assistance in determining this case.

Respondent also cites the case of Larew v. Newman, 81 Cal. 588, 23 Pac. 227, and Storke v. Gaux, 129 Cal. 526, 62 Pac. 68. In the Larew case the court held that, under the Constitution of California, article 11, par. 9, providing that the compensation of a coun-

cy officer shall not be increased during his term of office, one who is appointed to fill a vacancy in the office of the county superintendent of schools, the salary of which was increased after the election of his predecessor but before the happening of the vacancy, is not entitled to the increase, as the Political Code of California, par. 1004, provides that any person appointed to fill a vacancy is subject to "all the liability, duties, and obligations of the officer whose vacancy he fills." The Storke case follows the Larew case, and it will be observed that the statute of California above quoted no doubt controlled the court in arriving at the conclusion stated.

Respondent also cites Kearney v. Board of State Tax Commissioners (Mich.) 155 N. W. 510, but in that case the board was elected, and after their election and induction into office, by pre-arrangement with the appointing power, tendered their resignations, which were accepted, and immediately thereafter were re-appointed to the same position, and the court held that their resignation and reappointment was mere subterfuge, and that they could not receive any increase in salary by virtue of a law enacted subsequent to their original election or appointment as members of the Board of State Tax Commissioners.

The relator contends that "his term of office," as applied to A. A. MacDonald and E. L. Mitchell, the predecessors of the relator, terminated with the acceptance of the resignation, and that "his term of office," as applied to the relator, commenced with the date of his appointment and qualification, which, it is admitted, was subsequent to the enactment of the 1919 Act, and that, therefore, he is entitled to the salary of $3,000 per annum; citing in support of his contention Gaines v. Horrigan, 72 Tenn. 446, 4 Lea, 608, in which it is held:

"The constitutional provision that the salaries of judicial officers shall not be diminished or increased during the time for which they were elected does not apply to their term of office, and where a judge is appointed to fill out the unexpired term of a deceased judge, he is entitled to compensation fixed by law at the time he assumes the duties of the office."

In that case Judge Horrigan was appointed to fill a vacancy by reason of the death of Judge Scruggs, who was elected in 1878, before the passage of the Act of 1879, and whose salary was $2500, which could not have been increased or diminished during his term of eight years; Judge Horrigan being appointed after the passage of the Act of 1879, which reduced the salary to $2,000,

the court holding that Judge Horrigan was entitled to receive only $2,000 per year, because his term of office commenced after the passage of the Act of 1879, which reduced the salary to $2,000.

State ex rel. Bashford v. Frear, Secretary of State, 138 Wis. 536, involves the identical question in the case at bar, that is, whether one appointed by the Governor to fill a vacancy in an office takes the salary fixed by statute enacted and in force prior to his appointment, but not applicable to the salary of his predecessor in office, because enacted and approved after the term of such predecessor had begun. Section 26 of the Wisconsin Constitution is as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office."

The contention was, on the one hand, that said section should be construed as if it read, "during the term for which the first incumbent was elected," instead of "during his term of office." Timlin, J., concurring, reasons as follows:

"I think this would be giving the words 'public officer' the meaning of 'public office,' and the personal 'his term' the meaning of the different, impersonal expression 'the term,' and that such construction varies from the usual and ordinary meaning of these words, and is therefore inadmissible."

Also, Board of Chosen Freeholders of Atlantic County et al. v. Lee (N. J.) 70 Atl. 925. This case is in point, and, like the Tennessee case, diminished instead of increased the salary of the officer.

It has been suggested that to sustain the contentions of the relator will result in his receiving $3,000 per annum, while his associates appointed before the enactment of the 1919 law will receive only $2,500 per annum. This is indeed a novel condition, but not a sufficient reason for holding against the relator. To so hold does not take from his associates anything, though it happens to result to relator's advantage; they are all on the same basis, in that each member of the commission will be entitled to draw the salary provided by law at the time that he was inducted into office. If that were a sufficient reason for sustaining the contentions of the respondent, the result would be that many officials in this state could never receive an increase in salary, however much the general economic conditions might justify it, for the reason that the terms of office of

various officers in the same class terminate in different years, among them being the Justices of the Supreme Court, Criminal Court of Appeals, the Corporation Commission, and possibly others than the Industrial Commission, which we have referred to.

The substance of the provisions of our Constitution, as applied to this case is: "In no case shall the salary of any public official be changed after his appointment or during his term of office." The law fixing the salary of the relator was enacted prior to his appointment, his term of office began with his qualification, and may be terminated by resignation, death, removal for cause, or the expiration of the time of the unexpired term for which he was appointed. A law attempting to change his salary, subsequent to his appointment and qualification and before the termination of his present term, would fall within the terms of the section of the Constitution, but when enacted prior to his appointment, and prior to his term, is not within the constitutional inhibition.

The judgment of the trial court is affirmed.

GIBSON, C. J., and LEDBETTER, DUFF, CAMPBELL, McCOMBS, McKEEVER, RALLS, and JONES, JJ., concur.